IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KEVIN GLEN RIKARD,<br><br>                Petitioner,<br><br>    vs.<br><br>KELLY HARRINGTON,[1] Warden (A),<br>Kern Valley State Prison,<br><br>                Respondent. | No. 2:07-cv-01867-JKS<br><br>MEMORANDUM DECISION |

      Petitioner Kevin Glen Rikard, a state prisoner proceeding *pro se*, has filed a petition for habeas corpus relief under 28 U.S.C. § 2254.  Rikard is currently in the custody of the California Department of Corrections and Rehabilitation, incarcerated at Kern Valley State Prison. Respondent has answered; Rikard failed to timely reply.

I.  BACKGROUND/PRIOR PROCEEDINGS

      Rikard was convicted in the Plumas County Superior Court on a no-contest plea to one count each of second-degree murder (California Penal Code § 187(a)), robbery (California Penal Code § 211), use of a deadly weapon (California Penal Code § 12022(b)(1)), and inflicting great bodily injury during the commission of the robbery (California Penal Code § 12022.7(a)).  The Plumas County Superior Court sentenced Rikard to a prison term of 15-years-to-life for second degree murder, a consecutive term of three years on the robbery charge, a one-year enhancement

---

[1] Kelly Harrington, Warden (A), Kern Valley State Prison, is substituted for Anthony Hedgpeth, Warden, Kern Valley State Prison.  Fed. R. Civ. P. 25(d).

for the use of a deadly weapon charge, and another three-year enhancement for inflicting great bodily injury, for an aggregate prison term of 22-years-to-life. Rikard appealed his conviction to the California Court of Appeal, Third Appellate District, which affirmed his conviction in a reasoned unpublished decision on March 21, 2006.[2] Rikard did not seek further review of his appeal in the California Supreme Court. On January 25, 2007, Rikard filed a petition for habeas corpus relief in the California Supreme Court, which was summarily denied without opinion or citation to authority on June 27, 2007.

Rikard erroneously filed his petition for habeas corpus relief in the Court of Appeals, Ninth Circuit. The record shows that the petition, dated July 7, 2007, was received by the Court of Appeals on July 20, 2007; thus, the petition was timely filed. The Court of Appeals transferred the petition to this Court.[3] Rikard filed an amended petition with leave of court on June 28, 2008.

## II.  GROUNDS RAISED/DEFENSES

In his amended petition, Rikard raises two grounds: (1) the trial court improperly imposed separate punishments on the robbery and great bodily injury enhancement charges, and (2) the trial court refused to permit Rikard to address the court prior to sentencing. Respondent does not raise any affirmative defense.[4]

---

[2] Lodged Doc. D.

[3] *See* 28 U.S.C. § 2241(b); Fed. R. App. P. 22(a).

[4] *See* Rules—Section 2254 Cases, Rule 5(b).

III.  STANDARD OF REVIEW

Because Rikard filed his petition after April 24, 1996, it is governed by the standard of review set forth in the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254(d).  Consequently, this Court cannot grant relief unless the decisions of the California courts were "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" at the time the state court renders its decision or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."[5]  The Supreme Court has explained that "clearly established Federal law" in § 2254(d)(1) "refers to the holdings, as opposed to the dicta, of [the Supreme Court] as of the time of the relevant state-court decision."[6]  Thus, where holdings of the Supreme Court regarding the issue presented on habeas review are lacking, "it cannot be said that the state court 'unreasonabl[y] appli[ed] clearly established Federal law.'"[7]  When a claim falls under the "unreasonable application" prong, a state court's application of Supreme Court precedent must be objectively unreasonable, not just incorrect or erroneous.[8]  The Supreme Court has made clear that the objectively unreasonable standard is a substantially higher threshold than simply believing the state court determination was incorrect.[9]  In a federal habeas proceeding, the standard under which this Court must assess the prejudicial

---

[5] 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362, 405–406 (2000); *see Lockyer v. Andrade,* 538 U.S. 63, 70-73 (2003) (explaining this standard).

[6] *Williams*, 529 U.S. at 412.

[7] *Carey v. Musladin*, 549 U.S. 70, 77 (2006) (alterations by the Court); *see Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (per curiam).

[8] *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (internal quotation marks and citations omitted).

[9] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007).

impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the jury's verdict.[10]

In applying this standard, this Court reviews the last reasoned decision by the state court.[11]  Under AEDPA, the state court's findings of fact are presumed to be correct unless the petitioner rebuts this presumption by clear and convincing evidence.[12]

To the extent that Rikard raises issues of the proper application of state law, they are beyond the purview of this Court in a federal habeas proceeding.  It is a fundamental precept of dual federalism that the states possess primary authority for defining and enforcing the criminal law.[13]  A federal court must accept that state courts correctly applied state laws.[14]

## IV. DISCUSSION

<u>Ground 1:  Improper Imposition of Separate Judgments</u>.

Rikard argues that, because they were part of an indivisible course of conduct, the trial court improperly imposed separate punishments for the robbery count and the great bodily injury enhancement.  In his amended petition Rikard relies exclusively on state law, *i.e.*, California Penal Code § 654 and California appellate court cases construing and applying that section.  As

---

[10] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

[11] *Ylst v. Nunnemaker*, 501 U.S. 797, 804 (1991); *Robinson v. Ignacio,* 360 F.3d 1044, 1055 (9th Cir. 2004).

[12] 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

[13] *See Engle v. Isaac*, 456 U.S. 107, 128 (1982).

[14] *Bell v. Cone,* 543 U.S. 447, 455 (2005); *see also Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991) (a federal habeas court cannot reexamine a state court's interpretation and application of state law); *Walton v. Arizona,* 497 U.S. 639, 653 (1990) (overruled on other grounds by *Ring v. Arizona*, 536 U.S. 584 (2002)) (it is presumed that the state court knew and correctly applied state law).

noted above, the proper application of state law is beyond the purview of this Court in a federal habeas proceeding. A claim that the state court simply misapplied its own sentencing laws to the facts of this case does not, standing alone, present a sufficient basis for granting federal habeas relief.[15] In particular, an alleged violation of California Penal Code § 654 does not present a cognizable federal question.[16] Rikard is not entitled to relief under his first ground.

> Ground 2:  Failure to Permit Allocution at Sentencing.

Prior to sentencing Rikard submitted a letter to the court in which he expressed his remorse and apologized for the pain and suffering he had inflicted on the victim's family.[17] At the sentencing hearing, Rikard requested that he be permitted to address the court and the victim's family. This request was denied. Rikard contends that his right to due process was violated by this refusal. Therefore, according to Rikard, he is entitled to have his sentence vacated and the matter remanded to the Plumas County Superior Court for resentencing. On his direct appeal, the California Court of Appeal rejected Rikard's arguments, holding:

> Allocution is the formal inquiry by the judge of the defendant whether he or she has any cause to show why sentence should not be pronounced. (*People v. Cross* (1963) 213 Cal.App.2d 678, 681 (*Cross*).)  Under the common law, "[a]s early as

---

[15] *See Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[16] *Watts v. Bonneville*, 879 F.2d 685, 687 (9th Cir. 1989).

[17]  In defendant's letter, addressed "To the Family of Marc Oldham and Plumas County" defendant wrote: "I am very remorseful for what I have done. I'm sorry for the pain and suffering that I have caused you.  My stupid actions have caused a lot of anguish to the innocent victims involved.  This all could have been avoided if I would have acted like an adult and not a child.  I didn't realize how dependent I was on drugs and alcohol. I also now realize that I couldn't control it when on them.  And I now realize that I would do anything to get them.  "And I am very sorry it took a tragedy like this to make me realize that I am sorry. I know that the time I do, I will do to better myself so that I can prove to you that I want to change and that I'm very sorry too. I want to help other people avoid this or help them not to get as dependent on drugs or alcohol like I was.  I'm asking that you will accept my sincerest apology for what I have done and the pain I have caused you." (Lodged Doc. D, p. 5, n. 2.)

1689, it was recognized that the court's failure to ask the defendant if he had anything to say before sentence was imposed required reversal. [Citation.]" (*Green v. United States* (1961) 365 U.S. 301, 304 [5 L.Ed.2d 670, 673].) Rule 32(i)(4)(A)(ii) of the Federal Rules of Criminal Procedure perpetuates this common law right.

In California, the right of allocution is codified in sections 1200 and 1201. (*Cross*, *supra*, 213 Cal.App.2d at p. 681.) These provisions limit allocution to the formal inquiry by the court, which is entrusted with the discretionary power to allow the defendant to make a personal statement. (*Id*. at pp. 681-682.) Where a defendant is represented, the defendant's right of allocution is limited to giving counsel an opportunity to speak before judgment is pronounced. (*Id*. at p. 682; *People v. Sanchez* (1977) 72 Cal.App.3d 356, 359; cf. *People v. Lucero* (2000) 23 Cal.4th 692, 718 ["no court has held that in a noncapital case a trial court must, on its own initiative, *offer* the defendant allocution."], emphasis in original.)

*In re Shannon B*. (1994) 22 Cal.App.4th 1235 is not to the contrary. In that case, the court suggested *Cross* and its progeny were wrongly decided and that the defendant himself must be permitted to address the court. (*In re Shannon B*., *supra*, 22 Cal.App.4th at pp. 1239-1246.) *In re Shannon B*., however, involved a juvenile wardship proceeding in which the court concluded the right of allocution was superfluous because the juvenile already enjoyed a statutory right to address the court at the dispositional hearing. (*Id*. at p. 1247.) Hence, its discussion of allocution in criminal cases is dictum, which we decline to adopt.

Defendant's federal authorities are similarly inapposite, since the federal right of allocution is not a constitutional imperative binding on state courts. (*People v. Sanchez*, *supra*, 72 Cal.App.3d at p. 359.) We also are unpersuaded by defendant's attempt to equate a defendant's constitutional right to testify at trial with his federal procedural right to address the court personally at sentencing, after the adjudication of the defendant's guilt.

*People v. Scott* (1994) 9 Cal.4th 331 (*Scott*), offers no support to defendant's position. Scott's requirement of a timely objection to preserve sentencing issues for appellate review requires that counsel for the defendant timely object to a court's discretionary sentencing choices. (*Id*. at pp. 352, fn. 15, 356.) The decision says nothing of a represented defendant's right to address the court personally. Since cases are not authority for propositions not considered (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176), *Scott*, *supra*, does not assist defendant.

The court gave defense counsel ample opportunity to discuss the merits of defendant's sentence and considered defendant's personal letter to the court. No more was required. And even if we assume, for the sake of argument and the purpose of this discussion only, that the court was obliged to let defendant speak, he has failed to demonstrate that it is reasonably probable that he would have

received a more favorable sentence. The court had already considered defendant's letter, and indicated there was nothing defendant could add that would change its decision. There was neither error nor a miscarriage of justice. (Cal. Const., art. VI, § 13; *People v. Watson* (1956) 46 Cal.2d 818, 836.)[18]

As of this date, the United States Supreme Court has not held that a criminal defendant has a constitutionally protected right to allocution at sentencing. In *Hill*,[19] the Supreme Court held:

> The failure of a trial court to ask a defendant represented by an attorney whether he has anything to say before sentence is imposed is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus. It is an error which is neither jurisdictional nor constitutional. It is not a fundamental defect which inherently results in a complete miscarriage of justice, nor an omission inconsistent with the rudimentary demands of fair procedure. It does not present exceptional circumstances where the need for the remedy afforded by the writ of habeas corpus is apparent.[20]

Five years later the Supreme Court again recognized that the Fourteenth Amendment did not require the court to have a sentencing hearing and to give a convicted person an opportunity to be heard.[21] As of this date, the Supreme Court has not overruled, limited, or otherwise modified either the rule enunciated in *Hill*, or its application.

In *Boardman*,[22] the Ninth Circuit, in reversing the denial of a petition for a writ of habeas corpus by a California state prisoner, after examining *Hill* and noting that it left open the question

---

[18] Lodged Doc. D, pp. 6–9 (footnotes omitted).

[19] *Hill v. United States*, 368 U.S. 424 (1962).

[20] *Id*. at 428 (internal quotation marks and citations omitted); *see also Machibroda v. United States*, 368 U.S. 487, 489 (1962) (holding that, for the reasons stated in *Hill*, the failure of the sentencing judge at the time of sentencing to inquire of the defendant if he personally wanted to make a statement on his own behalf could not be raised on collateral review).

[21] *Sprecht v. Patterson*, 386 U.S. 605, 606 (1967) (citing *Williams v. New York*, 337 U.S. 241 (1949)).

[22] *Boardman v. Estelle*, 957 F.2d 1523 (9th Cir. 1992).

of where, as here, a defendant who is affirmatively denied an opportunity to speak during a sentencing hearing has a constitutionally guaranteed right to do so,[23] specifically held that, under that circumstance, the right to allocution at sentencing was a right protected by the due process clause of the United States Constitution.[24] Normally, this Court would be bound by that decision as the law-of-the-circuit,[25] which would mandate that this Court grant the petition, vacate the sentence and remand to the state court for a new sentencing hearing. There is, however, an exception to the law-of-the-circuit rule: When the reasoning or theory of prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority, later panels and district courts are bound by the later and controlling authority, and should reject the prior circuit opinion as having been effectively overruled.[26]

Respondent argues that reliance upon a pre-AEDPA case is insufficient, *i.e.*, that under AEDPA the state court's decision must be "contrary to, or involved an unreasonable application of, clearly established Federal law, *as determined by the Supreme Court of the United States*."[27] The precise issue presented is whether *Boardman* has been effectively overruled, an issue this Court does not address lightly. For the following reasons, the Court agrees with Respondent that *Boardman* is no longer controlling on the issue raised in Rikard's second ground.

---

[23] *See McGautha v. California*, 402 U.S. 183, 219 n.22 (1971) (vacated in part on other grounds by *Crampton v. Ohio*, 408 U.S. 941 (1972)) (noting that the Supreme Court had not since *Hill* had an occasion to address whether silencing a defendant who wished to speak rose to the level of a constitutional violation).

[24] *Boardman*, 957 F.2d at 1526–30; *accord Ashe v. North Carolina*, 586 F.2d 334, 336 (4th Cir. 1978).

[25] *See Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc).

[26] *Id.*

[27] 28 U.S.C. § 2254(d)(1) (emphasis added).

As the Ninth Circuit did in *Boardman*, prior to AEDPA in federal habeas cases "federal courts could rely on the jurisprudence of the courts of appeal to determine whether the state court decision was in violation of federal law."[28] AEDPA represented a sea change in the law of federal habeas jurisdiction.

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied-the state-court adjudication resulted in a decision that (1) "was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of ... clearly established Federal law, as determined by the Supreme Court of the United States." [29]

Recently, the Supreme Court reiterated the change that AEDPA wrought.

> AEDPA, however, changed the standards for granting federal habeas relief. Under AEDPA, Congress prohibited federal courts from granting habeas relief unless a state court's adjudication of a claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," § 2254(d)(1), or the relevant state-court decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." § 2254(d)(2).[30]

As to the necessity of holdings of the Supreme Court rulings, that Court has held:

> Given the lack of holdings from this Court regarding the potentially prejudicial effect of spectators' courtroom conduct of the kind involved here, it cannot be said that the state court "unreasonabl[y] appli[ed] clearly established Federal law." § 2254(d)(1). No holding of this Court required the California Court of Appeal to apply the test of [*Estelle v.*] *Williams* [425 U.S. 501 (1976)] and [*Holbrook v.*] *Flynn* [475 U.S. 560 (1986)] to the spectators' conduct here.

---

[28] *See Crater v. Galaza*, 508 F.3d 1261, 1262 (9th Cir. 2007) (Reinhardt, J. dissenting).

[29] *Williams v. Taylor*, 529 U.S. 362, 412 (2000).

[30] *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (footnote omitted).

>Therefore, the state court's decision was not contrary to or an unreasonable application of clearly established federal law.[31]

Recently, the Ninth Circuit recognized that "where the Supreme Court has not adequately addressed a claim, this court cannot use its own precedent to find a state court ruling unreasonable."[32]  Given the express language of AEDPA and the decisions of the Supreme Court interpreting and applying AEDPA, as well as those of the Ninth Circuit, this Court is of the opinion that it is not bound by *Boardman*.

Having determined that § 2254(d)(1) effectively overruled *Boardman*, this Court must address the issue of whether the decision of the California Court of Appeal "involved an unreasonable application of" *Hill*.  This Court's analysis starts with the proposition that "[t]he more general the rule, the more leeway courts have in reaching outcomes in case by case determinations."[33]  Second, the challenged state decision "'must be shown to be not only erroneous, but objectively unreasonable.'"[34]  The Ninth Circuit has recently stated:

>For purposes of AEDPA review, however, a state court's determination that is consistent with many sister circuits' interpretations of Supreme Court precedent, even if inconsistent with our own view, is unlikely to be "contrary to, or involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." 28 U.S.C. § 2254(d)(1).[35]

---

[31] *Carey v. Musladin*, 549 U.S. 70, 77 (2006); *see also Knowles v. Mirzayance*, 555 U.S. ___, 129 S. Ct. 1411, 1419 (2009) (same); *Wright v. Van Patten*, 552 U.S. 120, ___, 128 S. Ct. 743, 746-47 (2008) (same).

[32] *Holley v. Yarborough*, 568 F.3d F.3d 1091, 1097–98 (9th Cir. 2009) (citing *Musladin*).

[33] *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

[34] *Middleton v. McNeil*, 541 U.S. 433, 436 (2004) (*per curiam*) (quoting *Yarborough v. Gentry*, 540 U.S. 1, 5 (2003) (per curiam)).

[35] *Kessee v. Mendoza-Powers*, 574 F.3d 675, 677 (9th Cir. 2009) (Amended Opinion).

Other circuits appear to have taken a contrary view to the Ninth Circuit. For example, the Second and Eighth Circuits have held the right to allocution is not a constitutional right but has its basis in Federal Rule of Criminal Procedure 32(c)(3)(C) (now 32(i)(4)(A)(ii)).[36] The Seventh Circuit has reached a similar result,[37] as have the Tenth[38] and Eleventh.[39] This Court finds the reasoning and result of the Fourth Circuit in *Green v. French*,[40] although not controlling, persuasive on the issue.

> Green places great weight upon *Ashe v. North Carolina,* a decision from this circuit holding that "when a defendant effectively communicates his desire to the trial judge to speak prior to the imposition of sentence, it is a denial of due process not to grant the defendant's request." 586 F.2d 334, 336 (4th Cir.1978). *See also Boardman v. Estelle,* 957 F.2d 1523 (9th Cir.1992). *Ashe,* however, was decided by us—not by the Supreme Court—and it therefore does not demonstrate that the North Carolina Supreme Court's decision in *Green* was at odds with "clearly established Federal law[ ] *as determined by the Supreme Court,*" per the requirement of 28 U.S.C. § 2254(d)(1) (emphasis added). *Ashe* is also not an opinion which simply makes explicit a proposition of law that was implicit but nonetheless clearly established in previous Supreme Court caselaw. Rather, the *Ashe* decision was a significant expansion on previous Supreme Court precedents, and reasonable jurists clearly could debate the propriety of that expansion, as evidenced by the dissent in the Ninth Circuit's decision in *Boardman, see* 957 F.2d at 1530-34 (Hall, J., dissenting), and confirmed beyond any doubt by the other state and federal courts which, when confronted with the very same or similar questions, concluded that no due process violation is worked by a trial court's denial of an affirmative request for allocution. *See United States v. Li,* 115 F.3d 125 (2d Cir.1997) (noting that affirmative denial of allocution does not violate federal Due Process Clause); *State v. Chow,* 77 Hawai'i 241, 883 P.2d 663 (1994) (holding that denial of affirmative request for allocution does not violate

---

[36] *United States v. Li*, 115 F.3d 125, 132–33 (2d Cir. 1997); *United States v. Patterson*, 128 F. 3d 1259, 1260 (8th Cir. 1997).

[37] *Milone v. Camp*, 22 F.3d 693, 704 (7th Cir. 1994).

[38] *Scrivner v. Tansy*, 68 F.3d 1234, 1240 (10th Cir. 1995).

[39] *United States v. Fleming*, 849 F.2d 568, 569 (11th Cir. 1988) (per curiam).

[40] 143 F.3d 865 (4th Cir. 1998) (abrogated in part on other grounds by *Williams v. Taylor*, 529 U.S. 362, 376–77 (2000)).

federal Due Process Clause); *Freeman v. State,* 876 P.2d 283 (1994) (similar); *State v. Stephenson,* 878 S.W.2d 530 (1994) (similar); *Harris v. State,* 306 Md. 344, 509 A.2d 120 (1986) (similar); *In re Shannon B,* 22 Cal.App.4th 1235, 27 Cal.Rptr.2d 800 (1994) (denial of affirmative request for allocution does not violate state right of allocution where defendant was afforded other opportunity to testify before the court); *People v. Robbins,* 45 Cal.3d 867, 248 Cal.Rptr. 172, 755 P.2d 355 (1988) (similar); *People v. Childress,* 158 Ill.2d 275, 198 Ill.Dec. 794, 633 N.E.2d 635 (1994) (similar); *State v. Carr,* 172 Conn. 458, 374 A.2d 1107 (1977) (denial of affirmative request for allocution not violative of either state law or federal due process). Therefore, even if Green could demonstrate that the North Carolina Supreme Court's decision in his case were inconsistent with *Ashe,* he would not be entitled to *habeas* relief on that basis alone.[41]

Like the Fourth Circuit in *Green*, this Court cannot find that the decision of the California Court of Appeal was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court.[42] While a criminal defendant unquestionably has a common law right to allocution, which is embodied in the California statutes and the Federal Rules of Criminal Procedure, it is not, at this time, a right that the United States Supreme Court has determined is constitutionally required. The Ninth Circuit has noted that, under AEDPA, its view may not be the only reasonable one and, if the state court's interpretation is also reasonable, habeas relief must be denied.[43] It did so, holding that its own prior contrary decisions notwithstanding:

> Because the Supreme Court has not given explicit direction and because the state court's interpretation is consistent with many other courts' interpretations, we cannot hold that the state court's interpretation was contrary to, or involved an unreasonable application of, Supreme Court precedent.[44]

---

[41] *Id* at 882.

[42] 28 U.S.C. § 2254(d)(1).

[43] *Kessee v. Mendoza-Powers*, 574 F.3d 675, 676 (9th Cir. 2009) (Amended Opinion).

[44] *Id*. at 679.

Even if *Boardman* applied, Rikard would not be entitled to relief.  Denial of allocution is subject to a harmless error analysis.[45]  The standard under which this Court must assess the prejudicial impact of constitutional error in a state-court criminal trial is whether the error had a substantial and injurious effect or influence in determining the outcome.[46]  Because he submitted a letter to the court, Rikard was, in fact, permitted to address the sentencing court, albeit not orally at the hearing itself.  The trial court made clear that it had read his letter and nothing more he could say would impact the sentence to be imposed.  This Court also notes that Rikard has not indicated what additional factors in mitigation he might have presented to the sentencing court.  As for addressing the family members, no court has ever held that a criminal defendant has a constitutionally protected right to address the victim or victims of his or her criminal activity, be they direct or, in the case of family members, indirect victims.  Rikard has not shown that the denial of his right to allocution in any way affected the sentence imposed.

Rikard is not entitled to relief under his second ground.  This Court, however, cannot say that no reasonable jurist could debate or agree that the issue of the application of *Boardman* to this case should have been resolved in a different manner.  In light of the fact that the Ninth Circuit has not squarely ruled on the question, and in recognition of this Court's limited authority to depart from otherwise controlling circuit authority, the Court will grant a Certificate of Appealability on the issue of whether *Boardman* has been effectively overruled by AEDPA.

---

[45] *Boardman v. Estelle*, 957 F.2d 1523, 1530 (9th Cir. 1992).

[46] *Fry v. Pliler*, 551 U.S. 112, ___, 127 S. Ct. 2321, 2328 (2007) (adopting the standard set forth in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38 (1993)).

V.  CONCLUSION/ORDER

Rikard is not entitled to relief under either ground raised in his petition.  Accordingly,

**IT IS HEREBY ORDERED THAT** the Petition for a Writ of Habeas Corpus under 28 U.S.C. § 2254 is **DENIED**.

**IT IS FURTHER ORDERED THAT** the Court issues a Certificate of Appealability as to the issue of whether or not the decision in *Boardman v. Estelle*, 957 F.2d 1523 (9th Cir. 1992), compels reversal in this case or has been effectively overruled.  In all other respects, the Court declines to issue a Certificate of Appealability.[47]  Any further request for a Certificate of Appealability must be addressed to the Court of Appeals.  *See* Fed. R. App. P. 22(b); Ninth Circuit R. 22-1.

The Clerk of the Court to enter judgment accordingly.

Dated: October 16, 2009.

                                            /s/ James K. Singleton, Jr.
                                                     JAMES K. SINGLETON, JR.
                                                       United States District Judge

---

[47] 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (a COA should be granted where the applicant has made "a substantial showing of the denial of a constitutional right," *i.e.,* when "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further") (internal quotation marks and citations omitted).